# MAIN v. ST. CLAIR.

# MAIN v. SEXTON.

# SEXTON v. ST. CLAIR.

---

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; PRIORITY.

1. Where in an interference proceeding involving a filler form for embroidery, the evidence showed that the party first to conceive and disclose the invention of the issue was not convinced, after forms responding to the issue were embroidered and washed, that the forms would be a commercial success, and did nothing further until his adversaries had marketed the invention, it was *held*, that this did not constitute reduction to practice, and that as he was spurred into activity by knowledge of what his adversaries were doing, he was not entitled to an award of priority of invention. (Mr. Justice ROBB dissenting.)

2. In an interference proceeding involving a washable embroidery filler form, where the junior party, after making considerable progress, sought financial aid from his adversary, disclosing to him all he had done, and later his adversary, without his knowledge, filed an application for patent, it was *held*, on a review of the evidence, that the senior party had not acted in good faith, and that whatever knowledge he had of the invention he derived from the junior party.

Nos. 1170, 1171, and 1172. Patent Appeals. Submitted November 12, 1918. Decided December 2, 1918.

HEARING on appeals from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The COURT in the opinion stated the facts as follows:

These appeals by Frederick C. Main and Roy W. Sexton are from a decision of an Assistant Commissioner of Patents

---

NOTE.—As to effect in collateral proceeding of decision of patent office on issue of interference, see note in 24 L.R.A. (N.S.) 948.

in an interference proceeding in which priority of invention was awarded David A. St. Clair.

The invention is quite simple and embodies a filler form for hand embroidery. Formerly these forms were made of papier-maché and of paper and cloth. The evidence tends to show that they were not very satisfactory, because the filler material was liable to work through the embroidery threads, leaving them loose and irregular. This invention covers a filler form which will be compressed while the embroidery is being put in place, but which will expand when laundered, so as to take up any looseness in the stitches. Of the nine claims involved in the three-party interference, claims 2 and 3 are typical and are here reproduced:

"2. A filler form for embroidery, consisting of an expansible fibrous material and an incorporated soluble binding agent by which the fibrous material is held under transverse compression."

"3. A filler form for embroidery, consisting of an inherently expansible and elastic fibrous material with the fibers matted together and an incorporated soluble binding agent by which the material is stiffened and held under transverse compression; said binding agent being removable by washing to permit the form to expand."

There is involved an additional claim not found in the Sexton application, but common to the other two. This claim reads as follows:

"A filler form for embroidery, consisting of an expansible fibrous material and a starch binder which is soluble in water and by which the soluble material is held under compression."

*Mr. S. Mortimer Ward, Jr.,* and *Mr. A. D. Kenyon* for Main.

*Mr. Melville Church* for St. Clair.

*Mr. Reeve Lewis, Mr. W. B. Kerkam,* and *Mr. Leonard Day* for Sexton.

Mr. Justice Robb delivered the opinion of the Court:

Sexton formerly sold embroidery foundations for a New York firm and was thoroughly familiar with the art. In 1909 he severed his connection with that firm and incorporated the Initial Company of Wytheville, Virginia, and immediately commenced the manufacture of embroidery foundations, the venture proving a success. Early in February of 1910 he commenced experimenting with other material, such as felt, for his foundations, and soon thereafter conceived the idea of impregnating the filler with a soluble binding agent and subjecting it to compression. These experiments were continued during 1910 and 1912, and each of the tribunals of the Patent Office has found that Sexton was the first to conceive and disclose the invention, but each has decided against him on the ground that he has not shown a reduction to practice and because his renewed activity was the result of knowledge that his adversaries had placed the invention on the market. The majority of this court are of the same view. They attach considerable importance to the testimony of Sexton and his witnesses to the effect that, after forms responding to the issue were embroidered and washed, Sexton was not convinced that such forms would be a commercial success. Having in mind the very general phraseology of these claims, the simplicity of the invention, and the work done by Sexton, it is the view of the writer of this opinion that what he did prior to the entry of either of the other two parties into the field amounted to reduction to practice, and that, inasmuch as he neither secreted nor abandoned his invention thereafter, he should receive the award of priority.

Both St. Clair and Main were residents of Wytheville. St. Clair was a printer, and in the course of his business did some bookbinding. As early as the summer of 1913 he commenced to experiment with various materials, with the idea of producing an improved washable embroidery filler form. After he had made considerable progress he sought to interest Main, a lumber dealer, that he might have financial assistance. Main man-

ifested much interest in the enterprise, and the relations of the two parties were quite close, Main being informed of everything that St. Clair had done. In February of 1914, Main introduced a Mr. Hicks to St. Clair, who, after making some investigation as to his standing and reliability, disclosed to Hicks his ideas. A few weeks after this, Main, on the advice of Hicks and without the knowledge of St. Clair, went to Washington and filed an application. Thereupon he and Hicks associated in business and soon prepared to place the invention on the market. The question before us is that of originality.

The Examiner of Interferences, after an exhaustive review of the evidence, reached the conclusion "that St. Clair had a conception of the use of a compressible fibrous material and was in possession of the entire invention" prior to the earliest date of conception claimed by Main, and that Main derived his knowledge from St. Clair. The Examiners in Chief, placing a much narrower interpretation on the claims of the issue than did the Examiner of Interferences, reached the conclusion that Main was an independent inventor. The Assistant Commissioner, however, found in favor of St. Clair, and we are clearly of opinion that his decision was right. It would serve no useful purpose to review the evidence; but that Main did not act in good faith and that whatever knowledge he had of the invention he derived from St. Clair, we think clearly established.

The decisions are therefore affirmed. *Affirmed.*

A petition by Sexton for rehearing was denied December 21, 1918.